530 A.2d 487

James ROMANO, Jr., a minor, by his P/N/G Lisa and
James ROMANO, and Lisa and James Romano
in their own right

v.

Simon M. LUBIN, D.O., and Saul Jeck, D.O., and Peter A.
Molle, D.O., and Lester A. Ruppersberger, D.O., and
Delaware Valley Medical Center.

Appeal of BEASLEY, HEWSON, CASEY, COLLERAN,
ERBSTEIN AND THISTLE.

Superior Court of Pennsylvania.

Argued June 24, 1987.

Filed Aug. 28, 1987.

James E. Beasley, Philadelphia, for appellant.

Donald L. Toner, Doylestown, for Romano, appellees.

Before CIRILLO, President Judge, and TAMILIA and HOFFMAN, JJ.

CIRILLO, President Judge:

This case concerns whether the trial court abused its discretion in reducing an attorney's fee from $363,034.52 or 21% of a $1.75 million settlement in a medical malpractice case to $227,500.00 or 13% of the settlement, pursuant to Pa.R.C.P. 2039, which requires court approval of any settlement of a claim brought by a minor. The case is before this court on appeal from the order of the Court of Common Pleas of Bucks County.

Appellant, Beasley, Hewson, Casey, Colleran, Erbstein and Thistle represented a minor and his mother in a medical malpractice action seeking to recover for permanent brain damage they each suffered when an anesthetic was improperly administered to the mother during the birth of the child. The firm accepted both cases pursuant to contingent fee agreements, whereby the attorneys would receive a specified percentage of any settlement or verdict. A settlement of $1.75 million dollars was agreed to before trial on the minor's claim. After a review of the law firm's records,

the trial court awarded approximately $227,000.00 in counsel fees, though the settlement agreement called for the firm to receive approximately $363,000.00.

The court stated that its decision was based upon the considerations enunciated in *LaRocca Estate*, 431 Pa. 542, 246 A.2d 337 (1968), which include: the amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money involved; the skill and standing of the attorney; and the client's ability to pay. *Id.*, 431 Pa. at 546, 246 A.2d at 339. The trial court calculated that counsel spent 182 hours working on the minor's claim. The firm's requested fee would thus have been $1,994 per hour. The fee awarded by the court resulted in an hourly rate of $1,250. The court was guided by the fee schedule in § 602 of the Health Care Services Malpractice Act of 1975, Act 15, P.L. 390, No. 111, declared unconstitutional on other grounds in *Heller v. Frankston*, 504 Pa. 528, 533, 475 A.2d 1291, 1294 (1984). In its opinion, the trial court stated that it weighed the interests of the brain damaged child against the interests of his law firm. The court stated that it was required to "scrupulously [protect]" the rights of the child and therefore, felt duty bound to reduce the attorneys' fee so as to increase the minor-client's share of the settlement.

The trial court and appellee guardian ad litem claim that under the Pennsylvania Rules of Civil Procedure, the trial court has broad discretion in setting counsel fees in cases involving minors.

Pa.R.C.P. 2039 provides that:

(a) No action to which a minor is a party shall be compromised, settled or discontinued except after approval by the court pursuant to a petition presented by the guardian of the minor.

. . . .

(b) When a compromise or settlement has been so approved by the court, or when a judgment has been entered upon a verdict or by agreement, the court upon

petition by the guardian or any party to the action, shall make an order approving or disapproving any agreement entered into by the guardian for payment out of the fund created by the compromise; or the court may make such order as it deems proper fixing counsel fees and other proper expenses . . .

We agree with appellee that we may reverse the trial court's decision in this matter only if that honorable court abused its discretion or committed an error of law. Though the court identified the proper factors which it need examine, those factors were misapplied. We thus find that the trial court did abuse its discretion in drastically reducing the appellant's fee.

The trial court stated that it weighed the interests of the minor child against those of the law firm in making its decision. Setting these mutually compatible interests against each other misconstrues the very nature of a contingent fee agreement.

The contingent fee, though much maligned and misunderstood, has been termed "the poor man's key to the courthouse." An automobile company may decide that it values profits over people and manufacture a car with an inexpensive but hazardous design. That car then blows up, leaving the driver nothing more than charred flesh and his grieving family numb with shock and facing possible financial ruin. Could that poor family afford the per hour rate of the high-priced, Wall Street legal talent which the automobile company will employ to defend any suit they might bring? The answer is searingly obvious. A contingent fee agreement will enable that family to file suit and receive the compensation which they deserve. Any person whose heart stirs with the barest twinge of compassion must praise such a just result.

It is possible, though pointless, to elaborate as to countless, similar examples. The minority group member fired because of race; the deformed or paralyzed victim of a doctor's careless error; the employee whose employer knowingly exposes him to a deadly substance because it is

less expensive than a substitute product. Without the contingent fee, could any of these persons obtain justice? Surely, large corporations and insurance companies will always be able to afford teams of high priced attorneys. Pity the poor injured plaintiff who must finance such a contest from his own resources.

It must also be noted that attorneys often accept cases on a contingent fee basis which result in no recovery. The lawyer not only does not get paid, he will lose the money he has advanced the client to pay for the costs of the suit. When the court calculates the fee of a plaintiff's attorney, it must consider that the very same attorney may have spent thousands of uncompensated hours working on other cases. A single recovery may constitute the better portion of his yearly income.

Furthermore, the interests of an attorney and his client should never be set against each other. Those interests are complementary, not antagonistic. It is the incentive of a large award which motivates the attorney to vigorously pursue the case and demand the best possible settlement *for the client.* For every extra dollar the attorney receives, the client must necessarily receive three or four.

Based on the foregoing, we believe the trial court abused its discretion in this case. Its analysis pitted the attorney against the client, fundamentally misinterpreting the nature of a contingent fee agreement. The initial attorneys fee agreed upon was less than 25% of the settlement. Considering the skill of the practitioners involved, that was hardly an unreasonable figure. *See Heller v. Frankston,* 504 Pa. 528, 541, 475 A.2d 1291, 1293 (1984) (attorneys awarded 33% of one million dollar settlement of minor's claim).

Based on the foregoing, the order of the Court of Common Pleas of Bucks County is reversed and this matter is remanded for that court to enter an order awarding appellants attorney fees in the amount of $363,034.52. Jurisdiction relinquished.