## Murray Estate v. Love

*Douglas R. Bare,* for plaintiff.
*Karen Durkin,* for defendant.
*John R. Gailey Jr.,* for Ethel Coleman.

UHLER, *J.,* September 27, 1990 — Before the court is a petition for approval to compromise action in the above-captioned action pursuant to rule 2206 of the Pennsylvania Rules of Civil Procedure.

The background of this proceeding is as follows: The decedent, Georgia L. Murray, while a pedestrian on the streets of York, died September 9, 1989, as a result of being struck by an automobile operated by defendant, Jessica L. Love.

The decedent, who was unmarried, was survived by three children, Quintin T. Murray, age three; Philip M. Murray, age two; and Falisha L. Martin, age one year. The late Georgia Murray was also survived by her mother, Ethel L. Coleman, and her father, George O. Walter. She resided in a meretricious relationship with Philip A. Martin, who was the biological father of Falisha, but not of Quintin and Philip.

Ethel Coleman filed a petition with the Register of Wills of York County for the grant of letters of administration on her daughter's estate. George Walter renounced in favor of Ethel Coleman. Philip Martin filed a caveat to the grant of letters of Mrs. Coleman.

The caveator, Philip Martin, renounced his claim to letters of administration and requested that the York Bank and Trust Company be appointed administrator. The Register of Wills on November 20, 1989, after testimony and findings, granted letters of administration to the York Bank and Trust Company. An appeal to the Orphans Court Division was filed by Ethel Coleman whereupon a citation was issued upon the administrator to show cause why the relief prayed for in the appeal should not be granted. A hearing was held on February 16, 1990, before the Honorable John T. Miller. The hearing before Judge Miller focused upon issues of proposed fees intended to be charged by the bank fiduciary and appellant, as well as potential attorney's fees, to be incurred on a contingent basis in that the primary

asset of the estate is the cause of action generated by the untimely death of the decedent. Notwithstanding the representation made by Mrs. Coleman that she would not charge an administrator's fee nor would she enter into a contingent fee in excess of 10 percent, the court found that, based upon the animosity between Martin and Coleman, the Register's decision was not an abuse of discretion. Testimony during the Orphan's Court proceeding indicated that the bank had entered into a contingent fee agreement with the attorney who had represented Mr. Martin on a one-third basis (33 and one-third percent) on November 20, 1989.

Judge Miller further provided in his order:

"The matter of fees to be charged is, indeed, a concern to those interested in the estate, and to those who assume the responsibility for caring for the minor children of decedent. However, the court is not without authority to supervise these aspects of estate administration. It is within the court's discretion to regulate and approve the fees charged by fiduciaries and in the matter of the settlement of a wrongful death and survival claim involving minor beneficiaries, to regulate and approve counsel fees allowable out of that recovery. Probate, Estates and Fiduciaries Code section 3323, 20 P.S. §3323."

The Honorable Sheryl Ann Dorney, in the interim, has appointed Ethel Coleman as custodian over Quintin and Philip, while Philip A. Martin was appointed custodian over the minor Falisha.

On August 16, 1990, a petition for approval to compromise action as to minor's interest, designate persons entitled to recover damages, and allow deduction of expenses and counsel fees from minor's share and direct payment of balance pursuant to Pa.R.C.P. 2206, was filed with the court.

The petition represents as was confirmed at the hearing before it that defendant's liability insurance carrier has offered the available policy limits to the estate in full settlement of the cause of action. The petition further alleges that the insurance coverage is a single limit policy of $305,000. Third parties are entitled to property and liability payments. The available coverage for purposes of the proposed settlement are as follows:

| | |
|---|---|
| Policy single limits | $305,000.00 |
| Third-party property payments | (1,374.83) |
| Third-party liability | (30,000.00) |
| *Available coverage to estate* | *$273,625.17* |

Further charges are asserted against the estate's share for advanced costs for which counsel seeks reimbursement:

| | |
|---|---|
| Police report | $6.00 |
| Coroner's report | 70.00 |
| Filing fees for complaint | 50.00 |
| Service costs | 26.20 |
| Preliminary hearing transcript | 74.00 |
| Department of Health records | 8.00 |
| Asset search on defendant | 140.00 |
| *Total amount advance* | *$374.20* |

Counsel fees are claimed pursuant to the November 20, 1989 contingency fee agreement, in the amount of $92,108.

Additional charges for payment or reimbursement of the funeral expenses are sought by the bank in the amount of $3,170 from the settlement proceeds.

Neither the petition nor the proposed order delineate any allocation of the proceeds of the proposed settlement as between the wrongful death and the survival counts alleged in the complaint.

534

Ethel Coleman, guardian over two of the minors, has filed an answer to the within petition, challenging the settlement proposal, agreeing that the proposed settlement award is reasonable, but denying "that the contingent fee is the customary and normal fee in York County and that it represents a fair fee under all the circumstances."

Testimony presented revealed that the insurance carrier disclosed its policy limits as early as November 29, 1989, verbally advising counsel for the third-party complainant and petitioner that the policy limits were on the table only to be allocated between the potential claimants, before the filing of the complaint on February 20, 1990. This action encompassed the following pleadings: the complaint; petition for interpleader filed by defendant; answer filed by the York Bank and Trust Co.; petition by defendant to remit the settlement proceeds to the court; answer by the bank consenting to that process. No depositions or third-party discovery was pursued by petitioner which closely followed the criminal proceedings scheduled before the court of common pleas. The bulk of the activity appears to have been negotiations between the third-party complainant and petitioner.

The bank concedes that it did not speak with either Ethel Coleman or Philip Martin as to whether the proposed resolution was acceptable. It should be further noted that first-party benefits were received by the estate in the amounts of $1,500 and $10,000 respectively, for funeral expenses and accidental death benefits coverage.

Obviously, the issue before the court is whether the proposed settlement for and on behalf of the minor beneficiaries is "fair and equitable" and whether it should approve the agreement for the

payment of counsel fees and other proper expenses out of the share of damages to which the minors are entitled. See rule 2206.

The court concludes that the proposed gross settlement of $273,625.17 is reasonable under the circumstances and finds further litigation between the third party litigants would be counterproductive particularly when the minor children are in need of immediate financial support. Ethel Coleman does not contest the proposed tender of policy limits, less the third-party credit, as an appropriate resolution of the claim. Her principle complaint is with the reasonableness of the contingency fee arrangement under the circumstances.

An objective analysis of the proposed settlement is complicated in this matter, by reason neither the testimony of the administrator nor the petition and attached order provided the court guidance as to the allocation of the survival action and wrongful death action. In most cases, the wrongful death and survival claims are settled together. It is then necessary to allocate the settlement between the wrongful death and survival claims, which can affect not only who receives the money, but whether taxes are paid on the funds as well. The absence of a proposed allocation results in the court being called upon to allocate the same exercising its discretion in a reasonable fashion. It has been urged by other lower courts that a policy of the law exists favoring wrongful death beneficiaries over estate beneficiaries (the survival action). *Krause v. B&O Railroad,* 33 D.&C. 3d 458 (1983).

Adopting the articulated policy, the court is disinclined to charge the proposed settlement proceeds with the unpaid funeral bill of $3,170, wherein funds totaling $11,500 were earlier received by the estate

in part earmarked for payment of the funeral bill. In a like manner, the court does not authorize the charge of $76.20 as a reimbursable cost to counsel for the petitioner in that filing; service. or otherwise docket costs are traditionally reimbursed by defendant who in this case agreed to accept responsibility for the same.

Addressing finally the issue of counsel fees, the court has given consideration to the following issues: the contractual rights of the administrator pursuant to 20 Pa.C.S. §3372 in that only the administrator can initiate suit under rule 2202, Pa.R.C.P.; the rights, if any, of a statutory beneficiary to object to the nature of the settlement of the wrongful death action. See *Zielinski v. McGovern,* 17 D.&C. 3d 16 (1980); the provision of rule 2206 which provides that the court *"may* also approve an agreement for attorneys' fees. . ."* (emphasis supplied); the policy of the local court to approve up to 25 percent for settlement involving minors when the same has not proceeded to trial; and the underlying circumstances of the case.

The court is well aware of the purpose of contingent fee agreements and the benefit as being "the poor man's key to the courthouse." See *Romano by Romano v. Lubin,* 365 Pa. Super. 627, 530 A.2d 487 (1987), wherein the contingency fee of 21 percent was adopted by the Superior Court as the appropriate fee. By approving contingent fee agreements, the Superior Court found such action avoids the likelihood of pitting attorney against client. Unquestionably, the contingent fee arrangement permits the poor injured plaintiff the means to pursue just claims with aggressive legal talent and not drain upon his or her financial resources.

In this case, however, it appears obvious that the contingent fee agreement entered into by the bank with counsel initially was the conduit for antagonism from the time of the appointment of the administrator. Ethel Coleman, the guardian of two of the minor beneficiaries, strongly objected to the one-third fee at the time of appointment. The Superior Court's hope of stymieing antagonism over contingent fees was doomed in this case at the outset.

The issue is further complicated by the immediate tender of the policy limits to resolve the outstanding claims by defendant, coupled with exhibits describing services performed by counsel which included the estate proceedings. The statement of services does not set forth on a line item basis the time expended for each specific service, but only a grand total. The court agrees with petitioner that attempting to relate a contingency fee to an hourly rate is inappropriate. Nonetheless, the court finds that it is duty-bound to analyze the amount of work performed, the character of the services performed, the difficulty of the problems involved, the importance of the litigation, the amount of money involved, as its basis as to whether the agreed-upon fee should be awarded. Applying these standards and since the primary focus was dividing the pot with the third-party claimant after agreeing to the interpleader action, the court finds 20 percent to be a fair and equitable fee under the circumstances as outlined above, given that minors are the primary beneficiaries. Attorneys' fees thus approved are $54,725.03.

The administrator is authorized to execute a release of defendant on the basis set forth herein allocating the net proceeds as follows as to the children.

| | |
|---|---|
| Quintin | $72,867.38 |
| Philip | $72,867.38 |
| Falisha | $72,867.38 |

These amounts shall be deposited in accord with rules 2206 and 2064 in a federally insured bank, pending appointment by the Orphans' Court of a guardian or guardians over the estate of said minors.

An appropriate order will be entered in keeping with the memorandum.

## ORDER

And now, September 27, 1990, upon consideration of the foregoing petition, this court modifies the one-third contingency fee arrangement between the parties and their respective counsel and approves the settlement of $273,625.17.

(1) The counsel fees will be reduced from a one-third contingency to 20 percent which is deemed to be a fair and equitable fee under the circumstances. Thus, counsel's fees approved are $54,725.03.

(2) The administrator is authorized to execute a release on the basis set forth herein allocating the net proceeds as follows:

| | |
|---|---|
| Quintin Terell Otis Murray | $72,867.38 |
| Philip Alexander Martin Murray | $72,867.38 |
| Falisha Mone-Lynne Martin | $72,867.38 |

which shall be deposited in accord with rules 2206 and 2064 pending appointment by the Orphans' Court of a guardian or guardians over the estate of said minors.

(3) Counsel shall be reimbursed advanced costs in the amount of $298.