582 A.2d 1106

**Shani GILMORE, a Minor by Her Parents and Natural Guardians Marvin GILMORE and Sheila Gilmore, and Marvin Gilmore and Sheila Gilmore, in Their Own Right, Appellants,**

**v.**

**Victoria K. DONDERO, Appellee.**

Superior Court of Pennsylvania.

Argued June 13, 1990.

Filed Nov. 29, 1990.

600

Robert M. Nissenbaum, Philadelphia, for appellants.

Before BECK, POPOVICH and HESTER, JJ.

BECK, Judge:

The central issue on appeal is whether the trial court abused its discretion in reducing the amount of counsel fees payable out of the proceeds of a compromise of a minor's claim from the one-third fee agreed to between counsel and the minor's parents to a one-quarter fee. We find no abuse of discretion and affirm.

On May 20, 1988, Shani Gilmore, then 9 years old, was injured when she was struck by a car operated by Victoria Dondero. Ms. Dondero was insured by Aetna Casualty and Surety Insurance Company for $100,000 liability coverage. Sheila and Marvin Gilmore, Shani's parents (appellants), had auto coverage including substantial underinsured motorist coverage with Allstate Insurance Company. The Gilmores

retained counsel, Nissenbaum & Kaufman (co-appellant), to secure compensation for their daughter's injuries. Counsel began negotiations with Aetna on January 23, 1989 and filed a writ of summons against Ms. Dondero on January 30, 1989. No complaint was ever filed. Rather, Aetna offered to pay its policy limits almost immediately, in February 1989. The Gilmores promptly accepted this offer, after counsel had secured Allstate's consent to settle and waiver of its subrogation interests. By February 21, 1989 the settlement was accomplished and, on that date, the Gilmores filed a petition seeking court approval of the settlement pursuant to Pennsylvania Rule of Civil Procedure 2039.

The Petition alleged that the settlement amount was $100,000 and that one-third of the net amount after payment of costs ($33,123.01), plus reimbursement for other costs, should be distributed to Nissenbaum & Kaufman pursuant to their contingent fee agreement with appellants. The petition further requested that $10,000 be distributed to appellants for their "loss of services." The basis for this request was an allegation that both parents were employed and had lost substantial time at their respective jobs when they were either at the hospital with Shani or at home caring for her. The $10,000 was requested as compensation to the parents for their financial loss as a result of this lost time. The remainder of the settlement proceeds were to be paid into an account for the benefit of Shani.

On March 20, 1989, the Gilmores filed an amended petition for approval of the compromise and proposed distribution of the proceeds. The amended petition reiterated the request for distribution contained in the original petition, but also contained further support for counsel's contention that it was due the full one-third fee and for the Gilmores' contention that they were due reimbursement for their financial losses. To the amended petition were appended various detailed affidavits describing the effort and time expended by counsel and outlining the alleged financial losses incurred by appellants. One of the losses allegedly

incurred was $1,050.00 in lost earnings of appellants' other daughter, Dawn Gilmore, during the time that she stayed home to care for Shani. On May 30, 1989, the trial court entered an order approving the settlement, but directing distribution of the proceeds as follows:

| | | |
|---|---|---|
| To: Nissenbaum & Kaufman | | |
| Counsel Fees | $ | 25,000.00 |
| To: Nissenbaum & Kaufman | | |
| Reimbursement of Costs | $ | 531.50 |
| To: Dawn Gilmore | | |
| for services | $ | 1,050.00 |
| To: Shani Gilmore, a minor and Marvin and Sheila Gilmore, as parents and natural guardians to be placed in a restricted Federally insured account or certificate to be marked, "Not to be withdrawn until September 7, 1995, or upon further Order of the Court." | $ | 63,418.50 |
| TOTAL AWARD: | | $100,000.00 |

Appellants immediately filed the instant appeal from this order. The trial court then ordered appellants to file a Concise Statement of Matters Complained of on Appeal, pursuant to Pa.R.App.P. 1925(b). In response to this order, appellants timely filed a statement in which they contested the reduction of counsel fees and raised the following two additional issues:

5. The Trial Court abused its discretion in not awarding Petitioners Marvin and Sheila Gilmore $8,000.00 to pay the outstanding balance of medical bills after insurance payments.[1]

6. The Trial Court abused its discretion in not awarding Petitioner Sheila Gilmore compensation for time lost from her employment, particularly that taken as unpaid leave, as a result of her efforts to care for her injured daughter.

On appeal, appellants attempt to expand the issues by alleging trial court errors not contained in their Rule

---

1. This allegation of error was abandoned on appeal.

1925(b) statement. Appellants argue that the trial court erred in refusing to distribute some of the proceeds to Marvin Gilmore for his alleged lost employment time and that the trial court should not have awarded $1,050.00 to Dawn Gilmore, but rather to Marvin and Sheila Gilmore because they have already paid this sum to compensate Dawn.

 Matters not raised in a Rule 1925(b) statement may be considered waived by the appellate court. *See* Pa.R.App.P. 1925(b); *Baum v. Baum,* 395 Pa.Super. 182, 576 A.2d 1104 n. 1 (1990); *cf. Ryan v. Johnson,* 522 Pa. 555, 564 A.2d 1237 (1989). However, since the issue regarding reimbursement of Marvin Gilmore for lost earnings presents the same legal question as the properly preserved challenge to the trial court's refusal to award Sheila Gilmore reimbursement for her lost earnings, and since the trial court did address this issue in his opinion, we will not exercise our right to consider this issue waived. On the other hand, as to the court's award to Dawn Gilmore, we note that the trial court did not consider this issue in its opinion because the issue was not raised to that court. The trial court was denied the opportunity to address this issue and correct its own error, if one was made, and we therefore do not have the benefit of the trial court's rationale in support of its decision in this regard. Thus, we will decline to review this allegation of error.

 We begin with the challenge to the trial court's award of counsel fees in the amount of $25,000. The trial court's award was made pursuant to Pennsylvania Rule of Civil Procedure 2039, relating to court approval of the compromise or settlement of a minor's claim, which directs the court reviewing the settlement to consider the question of counsel fees:

(b) When a compromise or settlement has been so approved by the court. . . . the court, upon petition by the guardian or any party to the action, shall make an order approving or disapproving any agreement entered into by the guardian for the payment of counsel fees and other

expenses out of the fund created by the compromise, settlement or judgment; or the court may make such order as it deems proper fixing counsel fees and other proper expenses.....

Pa.R.C.P. 2039(b).

■ We have a limited power of review of court awarded fees. As the Supreme Court has so frequently stated, the responsibility for setting such fees lies primarily with the trial court and we have the power to reverse its exercise of discretion only where there is plain error. *See Estate of McClatchy*, 492 Pa. 352, 424 A.2d 1227, 1230 (1981); *In re Estate of Baker*, 485 Pa. 218, 401 A.2d 737 (1979). Plain error is found where the award is based either on factual findings for which there is no evidentiary support or on legal factors other than those that are relevant to such an award. *In re Estate of Baker*, 485 Pa. at 221, 401 A.2d at 739. The rationale behind this limited scope of review is sound. It is the trial court that has the best opportunity to judge the attorney's skills, the effort that was required and actually put forth in the matter at hand, and the value of that effort at the time and place involved. *Estate of McClatchy*, 492 Pa. at 357, 424 A.2d at 1230.

In this case, there is no contention that the trial court based its award on unsupported factual findings. Rather, the argument is that the court committed error of two kinds. First, appellants argue that the court rendered its decision on the basis of a local policy of the Court of Common Pleas for Chester County which provides that twenty-five percent (25%) of the amount recovered in settlement of a minor's case is a reasonable fee unless it can be demonstrated that a higher fee is justified in the particular case. Second, appellants argue that even if the use of twenty-five percent as a beginning point is permissible, nonetheless a higher percentage was justified in this case.

The Supreme Court has enumerated the factors to be considered in determining if a request for attorney's fees is reasonable. In *LaRocca Estate*, 431 Pa. 542, 246 A.2d 337 (1968), the court stated the factors as follows:

... the amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; whether the fund involved was "created" by the attorney; the professional skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and, very importantly, the amount of money or the value of the property in question [sic].

*Id.*, 431 Pa. at 546, 246 A.2d at 339.

Although the trial court's opinion contains a thorough and considered application of the *LaRocca* factors to this case, appellants argue that the court merely paid "lip service" to *LaRocca* and actually based its decision on the Chester County court's policy referred to above, which appellants argue is impermissible. We disagree.

Early in its opinion, the trial court referred to the fact that it had requested an amended petition regarding counsel fees from appellants because the first petition requested a one-third fee and Chester County had a local policy providing that in a minor's compromise case a fee of more than twenty-five percent of the gross amount recovered must be justified. However, after noting this policy, the court then conducted the balance of its analysis in perfect conformity to the mandate of *LaRocca*, carefully applying each of the listed factors to this case. We do not consider this manner of proceeding an abuse of discretion.

The Chester County policy referred to by the trial court here was more fully described in *Edwards v. Downingtown Area School District*, 34 Ches.Co.Rep. 346 (1986). There, the Court of Common Pleas for Chester County described its policy as follows:

Preliminarily, we are mindful that counsel certainly have a right to be compensated for their services. But at the same time, when that compensation becomes so handsome as to constitute a patent windfall for a lawyer, to the unfair detriment of the minor, discretion is best

exercised by decreasing that fee. Generally, this court is reluctant to poke its judicial nose into contracts between client and counsel, and even with the situation involving the rights of a minor, we are reluctant to be too intrusive, too assertive. But under our Rule 2039 mandate, we have an affirmative duty to be more than a passive, *pro forma* rubber stamp. The line must be drawn somewhere.... The Board of Judges of this county has considered the question, and we conclude that an appropriate presumptive lodestar for such cases, for suit having been filed, as at bar, should be 25% of the gross amount obtained.

*Id.* at 347.

By this description, we see that the Chester County court takes its responsibilities under Rule 2039 seriously. In an attempt to fulfill those responsibilities, that court has attempted to find a point at which to begin its analysis of requests for fees in minor's cases. Clearly the court employed its understanding of prevailing contingent fee standards in the relevant location and its experience with like cases to reach the conclusion that twenty-five percent is a presumptively reasonable base figure. It is peculiarly within the purview of a trial court to develop this sense for what is an appropriate fee in a given locale for a given type of case. Indeed, the very ability of a trial court to develop this knowledge is one reason why our standard of review of attorney's fee awards is so restrictive. As the Supreme Court has stated, we must rely not only on the peculiar opportunity of the trial court to assess the efforts of counsel in the particular case, but also on its knowledge of "... the rate of professional compensation usual at the time and place, ..." *Thompson Estate*, 426 Pa. 270, 281, 232 A.2d 625, 631 (1967).

We also stress that the presumption that twenty-five percent is a reasonable fee is a *rebuttable* presumption that can be overcome by showing justification for a higher fee in a particular case. *Id.* at 348. In assessing whether such justification has been shown, the court is to employ the

factors enumerated in *LaRocca*. We see no conflict between Rule 2039 and this policy. The rule itself leaves open the question of how the trial court is to decide whether to approve or disapprove a requested fee and nothing in *LaRocca* in any way suggests that a court may not begin its analysis with a base figure as a starting point. Consideration of any one or a combination of the *LaRocca* factors may convince the court that a different fee is justified. The burden on counsel is basically the same—counsel must show that the fee requested is reasonable under the test set forth in *LaRocca*.

We now turn to whether the trial court committed an abuse of discretion in determining that application of the *LaRocca* factors to the present case led to the conclusion that a $33,000 fee was unreasonable and should be reduced. We need not tarry long on this issue. In a case such as this, where the entire matter took only a few months to resolve, no complaint was ever filed, and the carrier tendered its policy limits promptly, we find no conceivable justification for a fee of $33,000 and no grounds for complaint as to a fee of $25,000.

It is important to note that the burden of justifying the requested fee is on the claimant. *Estate of Wanamaker*, 314 Pa.Super. 177, 460 A.2d 824, 825 (1983). In this case, Nissenbaum & Kaufman submitted nothing that convinced either the trial court or this court that a fee of $33,000 was reasonable. Of the total of approximately 134 hours allegedly spent by the firm on this case, by far the majority of that time was spent by paralegals and other staff (presumably meaning secretarial time.) Nor was the time spent on particularly demanding activities. As the trial court concluded, this was unquestionably no more than a straightforward personal injury case. In sum, on this record we cannot conceive of an argument that would render $33,000 a reasonable fee.

In so stating, we recognize that this case was not billed on an hourly rate basis. It was a contingent fee arrangement, and that admittedly involves some risk to counsel of

no recovery at all for the professional services rendered. *See Romano v. Lubin,* 365 Pa.Super. 627, 530 A.2d 487 (1987). However, *Romano* does not change the trial court's continuing responsibility to guard the interests of the minor and, where necessary, to disapprove the payment of a windfall to counsel from the fund recovered on behalf of the minor.[2] This is clearly the goal that underlies the requirement of Rule 2039 that a court approve settlement of such a claim and specifically review deductions from the fund for attorney's fees. *Wilson v. Bensalem Township School District,* 27 Pa.Commw. 609, 367 A.2d 397, 398 (1976). We find that the trial court has admirably shouldered its responsibility under Rule 2039 in this case.

■ The second issue posed concerns the trial court's refusal to order that an amount of the fund recovered on behalf of Shani be paid to her parents to compensate them for "financial loss" they incurred when they had to take time off from their respective jobs to care for their injured daughter. The trial court refused to make such an award. The court found that of all the time lost by the parents, only ten and one half hours of that time was taken without pay. The remaining time was either paid vacation or other paid leave. Thus, contrary to the suggestion contained in certain of appellants' lower court filings, the parents suffered little financial loss as a result of the time they were absent from work.[3] Moreover, even if all of the time lost had been unpaid the value of it would not have approached $10,000.

Appellants cite no case law in which an award of the type suggested here has been made out of a minor's settlement and we are as unpersuaded as the trial court that such an award is appropriate. We agree with that court's state-

---

**2.** In *Romano,* a panel of this court reversed a trial court determination that a fee of twenty-one percent (21%) of the amount recovered in settlement of a minor's case was unreasonable and must be reduced to thirteen percent (13%).

**3.** Apparently the gravamen of appellants' argument as to the time for which they were paid is that they should be compensated from their daughter's recovery because they had to use up their vacation time or other unpaid leave to care for her and therefore were deprived of their vacation.

ment that it is the responsibility of parents to care for their children, without compensation, and certainly without compensation from the fund recovered to compensate the child for his or her personal injuries. We also note that these parents have received more than adequate protection under the trial court's order. Compensation for services provided by the older daughter, Dawn, has been allowed and $10,000 has been put aside in case it is required to cover remaining medical expenses. We find no error.

Order affirmed.