Angel **CARTER** as the Administratrix of the Estate of William Carter, Jr.,

v.

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY (SEPTA) and Ronald Andrew Koran.**

**Appeal of Deutsch, Larrimore, Farnish and Anderson, L.,L.P.**

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 2002.
Decided Oct. 28, 2002.

---

Thomas S. Farnish, Philadelphia, for appellant.

No appearance entered on behalf of appellee.

BEFORE: SIMPSON, J., LEAVITT, J., and McCLOSKEY, Senior Judge.

OPINION BY Judge SIMPSON.

Deutsch, Larrimore, Farnish & Anderson, L.L.P., Counsel for Angel Carter, administratrix of the estate of William Carter, Jr., appeals the order of the Court of Common Pleas of Philadelphia County that restructured Counsel's proposed settlement distribution resulting from a survivor's action for wrongful death. For the reasons that follow, we affirm.

Angel Carter began this action against the Southeastern Pennsylvania Transportation Authority (SEPTA) and Ronald Koran, a trolley driver for SEPTA, after her father was struck and killed by a morning SEPTA trolley. Following a six-day civil jury trial, the parties reached a high/low settlement agreement moments before the jury returned a verdict for SEPTA and Koran on all claims. The terms of the settlement provided that, if the jury returned a verdict in favor of SEPTA, Carter would receive $50,000, but if the verdict

came back for Carter, she would receive $55,000. After the jury returned its verdict, Carter invoked the settlement stipulation.

Thereafter, Counsel filed a petition for approval of settlement and allocation in wrongful death action on Carter's behalf, which was assigned to another judge sitting in the Orphans' Court Division, the Honorable Joseph D. O'Keefe (Orphans' Court). Ultimately, the Orphans' Court entered an order approving settlement and order for distribution (distribution order). The distribution order significantly changed the amounts set forth in the settlement petition to be received by Carter and by Counsel.[1]

Counsel, ostensibly on behalf of Carter, appealed the distribution order to this Court the same day it was entered. Counsel also filed a motion before the Orphans' Court for reconsideration of the distribution order. In its opinion of December 21, 2001, the Orphans' Court recommended that this Court dismiss the appeal because of procedural defects or deny the appeal on the merits. The Orphans' Court noted that the identified plaintiff, Carter, was not aggrieved by the order. Rather, it was Counsel that felt aggrieved by the change of Counsel's proposed settlement, which resulted in Carter receiving $17,339.85 more.[2] The Orphans' Court quoted Pa. R.A.P. 501[3] and noted that "subsequent applications and interpretations of this rule [lead] to the conclusion" that the party aggrieved is the party adversely impacted by the decision. O. Ct. Op. at p. 4. The

1. Counsel's proposed distribution would have given the estate $15,106.92. The trial court's restructured distribution resulted in the estate getting $32,446.77.

2. The trial court reduced by $17,339.85 the amount set forth under Counsel's reimbursement of costs.

3. Pa. R.A.P. 501, titled: **Any Aggrieved Party May Appeal** states:

Except where the right of appeal is enlarged by statute, any party who is aggrieved by an appealable order, or a fiduciary whose estate or trust is so aggrieved, may appeal therefrom.

Orphans' Court observed that a prevailing party is not aggrieved and does not have standing to appeal an order entered in his or her favor. *Ratti v. Wheeling Pittsburgh Steel Corp.*, 758 A.2d 695, 700 (Pa.Super.2000), *petition for allowance of appeal denied,* 567 Pa. 715, 785 A.2d 90 (2001); *In re McCune,* 705 A.2d 861, 864 (Pa.Super.1997). The Orphans' Court also discussed Counsel's familiarity with Rule 501.[4]

We reject Counsel's argument that the Orphans' Court lacked a mandate to approve settlement of a survival action where no minor or incapacitated person has an interest.[5] The requirement for court approval protects the estate, as well as its creditors and beneficiaries. *Moore v. Gates,* 398 Pa.Super. 211, 580 A.2d 1138 (1990). The mandate for court review of settlements involving minors is similar to the mandate for court review of settlements involving estates[6] in Section 3323 of the Probate, Estates and Fiduciaries Code.[7] There is no authority supporting Counsel's claim that the Orphans' Court was without a mandate to review and revise the settlement here.

The Orphans' Court applied an analysis set forth in *LaRocca Estate,* 431 Pa. 542, 246 A.2d 337 (1968) to determine whether the fees and costs were reasonable. It considered several factors, including the verdict for the defendant. Reviewing the list of itemized costs for which Counsel sought reimbursement,[8] the Orphans' Court concluded the costs were excessive in light of the total recovery and the jury verdict for the defendant. We concur with this analysis.

Counsel highlighted Carter's acknowledgement to the trial judge that she understood the potentially high costs associated with settling the litigation. In response, the Orphans' Court noted that when Carter was presented with the high/low settlement agreement she had very little choice but to go along with it or recover nothing. Consequently, the Orphans' Court viewed skeptically Carter's on-the-record acknowledgment of the settlement terms. Her acknowledgment, though not to be disregarded, did not relieve the court of its oversight responsibility. *Gilmore v. Dondero,* 399 Pa.Super. 599, 582 A.2d 1106 (1990).

Win or lose, Counsel would receive approximately 70% of the recovery under the settlement it negotiated. A settlement

---

4. The Orphans' Court explained Counsel was reprimanded by the Superior Court for identical conduct in *Green v. SEPTA,* 380 Pa.Super. 268, 551 A.2d 578 (1988). There, a minor plaintiff and her mother appealed a trial court order that directed the proceeds of the minor's action as authorized by Pa. R.C.P. No.2039 with the result that Counsel's fees were reduced and the minor plaintiff's award correspondingly increased.

   In Carter's action here, the Orphans' Court observed that Counsel is *"the same or substantially the same firm that was harshly rebuked by the Superior Court in Green for precisely the same conduct,* [an occurrence that] gives rise to serious ethical questions that trial counsel should be forced to answer." O. Ct. Op. at p. 6, (emphasis in original).

5. Before this Court, Counsel cited no authority supporting this conclusion, beyond noting that contingent fee agreements are permitted in Pennsylvania under Pa. Rule of Professional Conduct 1.5(c); *Romano v. Lubin,* 365 Pa.Super. 627, 530 A.2d 487 (1987).

6. The rules of statutory interpretation provide that similar statutes should be interpreted similarly. 1 Pa.C.S. § 1921(c)(5).

7. 20 Pa.C.S. § 3323.

8. The major costs are: $13,233.75 fee for an engineer's report and trial testimony; and $7,925 fee for an expert medical report. Reproduced Record, 20a.

that protects a contingency fee and recovery of costs first and an estate's recovery thereafter is the proper subject of close judicial scrutiny. Accordingly, we affirm restructuring the distribution so that Counsel received about one-third of the total, an amount found to comport more closely with the practices and procedures in Philadelphia.

## ORDER

AND NOW, this 28th day of October, 2002, we affirm the order of the trial court in the above-captioned matter.