J-A02017-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| KERRI L. SIEMINKEWICZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PAUL R. SIEMINKEWICZ | : | |
| | : | |
| Appellant | : | No. 590 WDA 2019 |

Appeal from the Order Entered March 19, 2019
In the Court of Common Pleas of Westmoreland County Civil Division at
No(s):  No. 2367 of 2012

BEFORE:  SHOGAN, J., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OLSON, J.:                **FILED FEBRUARY 14, 2020**

Appellant, Paul R. Sieminkwicz ("Husband"), appeals the March 19, 2019 order entered in the Court of Common Pleas of Westmoreland County. We affirm in part, vacate in part, and remand.

The facts and procedural history of this case are as follows. The parties, Husband and Kerri L. Sieminkwicz ("Wife"), were married in October 1992. Wife filed a complaint in divorce on November 2, 2012. "[T]hereafter, during a long and tortuous proceeding, [Husband] impeded the orderliness of the litigation" by filing "several civil actions before magistrate district judges" asserting claims "inextricably related to marital [] and marital property issues." Trial Court Opinion, 8/21/19, at 1-2. Nonetheless, the court entered the divorce decree on February 17, 2015. The parties subsequently executed a Consent Order of Court ("Consent Order") on August 27, 2015, which served as their final marital settlement agreement. *See* Consent Order, 8/27/15, at

1-6. Contained within the Consent Order was the provision that "[n]o further civil lawsuits shall be filed by either party relating to the marital property or marital issues." *Id*. at 3, ¶9.

On February 26, 2018, Husband filed two civil actions against Wife. Consequently, Wife filed a petition for contempt against Husband. Wife's Petition for Contempt, 6/13/18, at 1-8. In her petition, Wife claimed that Husband violated the Consent Order by filing the aforementioned civil actions. *Id*. Wife also sought to recover attorney's fees for Husband's alleged contempt. *Id.* Husband then filed a petition for contempt against Wife, claiming that she also violated the Consent Order. Husband's Petition for Contempt, (Un-dated), at 1-6. The trial court held a hearing on August 6, 2018,[1] during which it dismissed Husband's petition for contempt. *See* N.T. Hearing, 8/6/19, at 31, 49, and 70. On March 19, 2019, the trial court issued an order granting Wife's petition for contempt and ordering Husband to pay $7,400.00 in attorney's fees, payable in monthly installments of $1,000.00. Trial Court Order, 3/19/19, at 1. This timely appeal followed.[2]

---

[1] Husband appeared *pro se* at the August 6, 2018 hearing.

[2] Husband filed a notice of appeal on April 16, 2019. On May 1, 2019, the trial court issued an order directing Husband to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b)(1). On May 17, 2019, Husband filed a timely *pro se* 1925(b)(1) statement. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on August 21, 2019. On appeal, Husband is represented by counsel.

Husband raises the following issues on appeal:[3]

I. Whether[,] in light of the ambiguities of the Consent Order, the trial court erred in granting [Wife's] petition for contempt against [Husband]?

II. Whether the trial court erred by dismissing [Husband's] petition for contempt particularly where the trial court acknowledged [Wife's] failure to abide by the Consent Order?

III. Whether the trial court erred in refusing to require [Husband's subpoenaed witness] to appear in[-]person at [the] August 6, 2018 hearing over objections of [Husband]?

IV. Whether the trial court erred in granting [Wife's] request for attorney[']s fees without requiring [her] to produce a detailed billing statement when [Husband] objected to the amount of legal fees as unreasonable?

V. Whether the trial court abused its discretion in finding monthly installments of $1,000.00 to pay [Wife's] awarded legal fees reasonable?

Husband's Brief at 4.

Husband's first two issues challenge the trial court's grant of Wife's petition for contempt and its denial of Husband's petition for contempt. Husband's Brief at 8-10 and 13. Husband asserts that the trial court erred in both respects. *Id.* We disagree.

Our standard of review is as follows:

When we review a trial court's finding of contempt, we are limited to determining whether the trial court committed a clear abuse of discretion. This Court must place great reliance on the sound discretion of the trial judge when reviewing an order of contempt.

_____

[3] We have altered the order of Husband's issues for clarity and ease of discussion. *See* Husband's Brief at 4.

This Court also has stated that each court is the exclusive judge of contempts against its process.

***G.A. v. D.L.***, 72 A.3d 264, 269 (Pa. Super. 2013) (internal citation and quotations omitted). We previously determined:

A court may exercise its civil contempt power to enforce compliance with its orders for the benefit of the party in whose favor the order runs but not to inflict punishment. A party must have violated a court order to be found in civil contempt. The complaining party has the burden of proving by a preponderance of evidence that a party violated a court order.

***Garr v. Peters***, 773 A.2d 183, 189 (Pa. Super. 2001) (internal citation omitted).

We first address Wife's petition for contempt. In her petition, Wife claimed that Husband violated Paragraph 9 of the Consent Order, which specifically prohibited the parties from filing civil lawsuits against each other if the subject of the suit related to marital property or marital issues.[4] Consent Order, 8/27/15, at 3, ¶ 9. Herein, Husband filed two civil lawsuits against Wife on February 26, 2018. N.T. Hearing, 8/6/18, at 5. In Husband's first lawsuit, he sought to recover $16,174.96 from Wife for his alleged overpayment of child support. Wife's Petition for Contempt, 6/13/18, Exhibit C. A review of the certified record reveals that Husband was required to pay Wife $600.00 per month in child support. N.T. Hearing, 8/6/18, at 30.

---

[4] Paragraph 9 of the Consent Order states: "[Husband] shall dismiss all pending civil lawsuits before [Magistrate District Judge] Thiel on or before Friday, September 4, 2015, with prejudice. No further civil lawsuits shall be filed by either party relating to the marital property or marital issues." Consent Order, 8/27/15, at 3, ¶ 9.

Paragraph 14 of the Consent Order governs the modification of support. Consent Order, 8/27/15, at 3, ¶ 14. Thus, Husband violated Paragraph 9 of the Consent Order by filing a separate civil action to recover any alleged overpayment because Husband should have sought to modify his support obligations consistent with Paragraph 14 of the Consent Order. In his second lawsuit, Husband alleged that Wife accessed and utilized a business line of credit held by Siemco Electric, LLC ("Siemco"). Wife's Petition for Contempt, 6/13/18, Exhibit B. Specifically, Husband claimed that Wife used the Siemco business account to pay a cable bill in the amount of $176.58 and place a $4,000.00 down payment on a 2008 Volvo. N.T. Hearing, 8/6/18, at 44-48. These transactions, however, occurred in 2012, three years prior to the execution of the Consent Order, and six years prior to Husband initiating the aforementioned civil action. *Id*. Husband's claims were therefore "liquidated in the [Consent Order]." *Id*. at 49. Based upon the foregoing, we conclude that the trial court did not commit an abuse of discretion in granting Wife's petition for contempt.[5]

_____

[5] In his appellate brief, Husband argues that the trial court erred in finding him in contempt because the Consent Order "is ambiguous as Paragraph 9 and [Paragraph] 17 contradict each other." Husband's Brief at 9. Specifically, Husband argues that in "Paragraph 9, the parties agree to not pursue any further legal action against each other, but Paragraph 17 allows the parties to pursue further legal action." *Id*. Upon review, we conclude that the Consent Order is not ambiguous. Paragraph 9 prohibits the parties from filing any civil lawsuits "relating to the marital property or marital issues." Consent Order, 8/27/15, at 3, ¶ 9. Paragraph 17 permits the parties to "sue for specific performance or damages" only if a "party defaults in the due performance of

Next, we address Husband's petition for contempt. In his petition, he asserted three counts of contempt. We will address each in turn.

First, Husband claimed that, after the Social Security Administration deemed him "totally disabled," Wife "refused" to abide by the Consent Order. Husband's Petition for Contempt, (Un-dated), at 2-3. Specifically, Husband alleged that Wife violated Paragraph 14 of the Consent Order, which outlines the party's agreement for child support. *Id.*; *see also* Consent Order, 8/27/15, at 3, ¶ 14. We disagree.

As stated above, Paragraph 14 governs modification to the amount of Husband's child support obligation. Specifically, Paragraph 14 states:

> **[Paragraph 14:]** The Order dated February 17, 2015 shall be superseded by agreement of the parties with regard to child support and [Husband's] imputed income. If [Husband] seeks to modify the child support to below $600[.00] (+$25[.00] in arrears, totaling $625.00) per month, without [Husband] being determined to be disabled by a finding by Social Security, there will be a dollar for dollar set-off in equitable distribution to be paid to the [Wife]. [Husband] will agree to pay the difference between the lower amount and $600.00 to [Wife]. The reverse shall be true for the [Wife], in that if she seeks to increase child support [to] any amount above $600.00 per month, there shall be a dollar for dollar set-off which shall be paid in equitable distribution by the [Wife] to the [Husband].

---

any of the terms of [the] Consent Order." *Id.* at 4, ¶ 17. We therefore conclude that the Consent Order is clear and unambiguous because, read as a whole, it prohibits the parties from seeking further legal action against each other except if the other is in default of the Consent Order. As such, Husband's claim is without merit. *See Tuthill v. Tuthill*, 763 A.2d 417, 420 (Pa. Super. 2000) ("The fact that the parties have different interpretations of a contract does not render the contract ambiguous.").

Consent Order, 8/27/15, at 3, ¶ 14. Therefore, to be found in contempt, Wife must have sought to increase the amount of child support and failed to provide Husband with a dollar for dollar set-off.[6] This did not occur. Indeed, Husband admitted during the August 6, 2018 hearing that Wife did not seek to increase the amount of child support. N.T. Hearing, 8/6/18, at 25 and 30. Accordingly, we discern no abuse of discretion.[7]

Second, Husband contends that Wife failed to distribute certain assets in violation of the Consent Order. Husband's Petition for Contempt, (Un-dated), at 3-4. Specifically, Husband argued that Wife did not produce

_____

[6] Husband is under the impression that, upon the Social Security Administration finding him disabled, Paragraph 14 of the Consent Order enables him to **automatically** adjust his child support obligation. ***See*** N.T. Hearing, 8/6/18, at 24. Husband, however, ignores the language in Paragraph 14 which explicitly requires him to "seek to modify" the support order. Consent Order, 8/27/15, at 3, ¶ 14.

[7] In his appellate brief, Husband claims that the trial court "acknowledged [Wife's] failure to abide by the [C]onsent [O]rder." Husband's Brief at 13. In support, Husband cites the following statement made by the court:

> [Husband], you are claiming that [Wife] has refused to abide by the [C]onsent [O]rder[] with respect to the modification petitions which are pending. From what you told me, she has.

Husband's Brief at 13, *citing* N.T. Hearing, 8/6/18, at 31. By including only this sentence, Husband misconstrues the trial court's statement. In the sentence immediately following, the trial court clarified that "[Wife] has not filed anything at domestic relations." ***Id.*** Thus, the trial court did not acknowledge a failure by Wife to meet the terms of the Consent Order. Instead, the trial court indicated the opposite: that Wife complied with the Consent Order and, therefore, was not in contempt.

his portion of the purchase price from the sale of the marital residence pursuant to Paragraph 3 of the Consent Order.[8] *Id.* Additionally, Husband claimed that Wife did not provide him with Siemco's "assets" as required by Paragraph 6 of the Consent Order.[9] *Id.* Upon review, we conclude that Husband's claims are meritless. Indeed, during the August 6, 2018 hearing, Husband, himself, admitted that Wife distributed the proceeds of the sale of the marital residence. Specifically, he stated:

> [Husband:] I mean, she closed [the sale] on November 19[, 2015]. **I received nothing until January 8[, 2016]**.

_____

[8] Paragraph 3 of the Consent Order states:

> The parties agree to list the marital residence . . . within [ten] days of the date of this order. Said property shall be sold "AS IS". The listing price shall be at [f]air [m]arket [v]alue as determined and set by said realtor. Any offers below 10% of said listing price will be by agreement of the parties, and if no such agreement, by order of court. [Wife] shall receive the first $180,000[.00] of the net proceeds of the marital residence. This amount is not modifiable. [Husband] shall receive the remainder of any proceeds of the sale of the house. Pending the sale of the house, [Wife] shall maintain exclusive possession of the marital residence, and shall be responsible for all taxes, insurance and utilities associated with said residence. Both [Wife] and [Husband] shall be named insureds and [Wife] shall obtain and maintain said insurance. Consent Order, 8/27/15, at 2-3, ¶ 3.

[9] Paragraph 6 of the Consent Order states:

> [Husband] is awarded any and all interest, assets and liabilities associated with Siemco[]; this includes[,] but is not limited to[,] any inventory, tools[,] and vehicles (trucks and skid-loader). Consent Order, 8/27/15, at 2-3, ¶ 6.

N.T. Hearing, 8/6/18, at 42 (emphasis added). Furthermore, the Siemco "assets" Wife allegedly failed to distribute to Husband were the basis of one of his February 2018 civil suit against Wife. As we noted above, because the two withdrawals took place in 2012 and were resolved under the Consent Order, they cannot be the basis for Husband's claims for contempt. Indeed, it is impossible for Wife to violate the Consent Order with acts that took place prior to its existence. Accordingly, we discern no abuse of discretion.

Lastly, Husband alleged that Wife violated the Consent Order by deliberately making a false report to his parole officer, Russel Stubock. Husband's Petition for Contempt, (Un-dated), at 5. Husband claimed that Wife called Stubock and falsely stated that Husband contacted her in violation of his probation. N.T. Hearing, 8/6/18, at 53. Per Husband, this violated Paragraph 1 of the Consent Order which requires the parties to "live separate and apart from each other, free from interference or control by the other." Consent Order, 8/27/15, at 1, ¶ 1. During the August 6, 2018 hearing, Stubock testified that he "received a phone call back in March [2018,]" during which Wife "advised him that she was being bothered by [Husband]." N.T. Hearing, 8/6/18, at 65. The trial court then dismissed Husband's petition for contempt. *Id.* at 70. Therefore, it appears that the trial court credited Stubock's testimony that Wife made a report and that Husband violated his probation by contacting her. *See Harcar v. Harcar*, 982 A.2d 1230, 1236 (Pa. Super. 2009) ("This Court defers to the credibility determinations of the trial court with regard to the witnesses who appeared before it, as the court

had the opportunity to observe their demeanor.")  The record supports the trial court's assessment.  Based on the foregoing, we conclude that the trial court did not commit an abuse of discretion in denying Husband's petition for contempt.

In Husband's third issue, he argues that the trial court erred in "refusing" to require the in-person testimony of his subpoenaed witness. Husband's Brief at 13.  In particular, Husband challenges the trial court's decision to permit Stubock to testify during the August 6, 2018 hearing *via* telephone.  *Id.*  Upon review, however, we conclude that Husband waived this issue on appeal.  Indeed, contrary to Husband's assertions, he did not object to the procedure used by the trial court during the proceeding.  Thus, Husband's third issue is waived.[10]  *See* Pa.R.A.P. 302 ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.");

_____

[10] Even if Husband had not waived this issue, we would conclude that no prejudice occurred.  Husband claims that, because the trial court failed to require the in-person testimony of Stubock, he "had no reasonable way to refresh [his] recollection with documents."  Husband's Brief at 14.  We note that, during the hearing, Husband sought to present Stubock's testimony to prove that Wife falsely accused him of contacting her in violation of his probation.  While questioning Stubock *via* telephone, Husband asked him whether Wife stated that Husband tried to contact her "by telephone."  N.T. Hearing, 8/6/18, at 66.  Because Stubock could not recall that exact statement, Husband attempted to refresh his recollection by discussing Stubock's testimony at a prior hearing.  *Id.*  Thus, it appears that, while Stubock did state that Wife contacted him, Husband's contention on appeal is that the trial court erred because Husband was not able to refresh Stubock's recollection as to whether Wife specifically told him that the offending communication took the form of a telephone call from Husband to Wife.  This minor point did not result in prejudice for Husband.

- 10 -

*see also Tecce v. Hally*, 106 A.3d 728, 732 (Pa. Super. 2014) ("Parties may waive rights, even due process rights and other rights of constitutional magnitude" by failing to raise an objection before the trial court, and in turn, failing to preserve the objection on appeal).

In Husband's remaining issues, he challenges the trial court's award of attorney's fees to Wife. He argues that the trial court erred by granting Wife's counsel's request "based on a general invoice" and a "generic assertion." Husband's Brief at 11. We agree.

We note:

We have a limited power of review of court awarded fees. As the Supreme Court has so frequently stated, the responsibility for setting such fees lies primarily with the trial court and we have the power to reverse its exercise of discretion only where there is plain error. Plain error is found where the award is based either on factual findings for which there is no evidentiary support or on legal factors other than those that are relevant to such an award. The rationale behind this limited scope of review is sound. It is the trial court that has the best opportunity to judge the attorney's skills, the effort that was required and actually put forth in the matter at hand, and the value of that effort at the time and place involved.

\*\*\*

[Our] Supreme Court has enumerated the factors to be considered in determining if a request for attorney's fees is reasonable. [The Court identified the following considerations:]

... the amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; whether the fund involved was "created" by the attorney; the professional skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the

- 11 -

services rendered; and, very importantly, the amount of money or the value of the property in question [*sic*].

***Gilmore by Gilmore v. Dondero***, 582 A.2d 1106, 1109 (Pa. Super. 1990) (internal citations omitted).

At the August 6, 2018 hearing, following argument concerning Wife's contempt petition, her counsel stated that they were "seeking sanctions in the form of reimbursement of all attorney['']s fees and expenses incurred by [Wife]." N.T. Hearing, 8/6/18, at 6. In addressing the amount of the fees, the following exchange occurred:

> **[Wife's Counsel]**: [] My client, to date, would testify in a statement that she [spent] in excess of $7,400.00 dealing with these civil lawsuits, plus whatever is involved in this enforcement action.
>
> **[The court]**: Wow.
>
> **[Husband]**: We [have] never even been to court, Judge.
>
> ***
>
> **[The court]**: She paid the counsel fees. You [are] going to challenge them as unreasonable?
>
> **[Husband]**: Well, there [is] no doubt.
>
> **[The court]**: Well, they were actually paid.
>
> **[Wife's counsel]**: They were paid to date.
>
> **[The court]**: How am I going to argue with that? She paid them. Whether it [is] reasonable or not, it [is] between the attorney and the client. That matter is closed. I [will] let them submit counsel fees. I can determine whether they [are] reasonable and so forth, but that matter is closed.

***Id.*** at 19-20. At the close of the hearing, Husband again objected to the reasonableness of Wife's claimed attorney's fees and requested to see the

"billable hours" and "what the hours were for." *Id.* at 71. Wife's counsel contended that such a disclosure would violate attorney-client privilege, but offered to submit the hours for an in-camera review by the court. *Id.* at 72. There is, however, no evidence that an in-camera review ever occurred. In fact, in its order, the trial court merely stated that because of the "contentious history of this case," it "[could not] determine that [the] fees [were] unreasonable." Trial Court Opinion, 3/19/19, at 3. It is therefore unclear whether the trial court's determination possesses evidentiary support. As such, we reverse the trial court's order and we remand for an evidentiary hearing to determine whether the amount of Wife's attorney's fees were, in fact, reasonable.[11]

In summary, we reverse the trial court's order as to the amount of attorney's fees awarded and remand for an evidentiary hearing. Otherwise, we affirm.

Order affirmed in part and vacated in part. Case remanded for an evidentiary hearing limited to the amount of attorney's fees to be awarded. Jurisdiction relinquished.

_____

[11] Because we have vacated the trial court's award of attorney's fees and remanded this case for an evidentiary hearing regarding the reasonableness of these fees, we need not address Husband's last issue which contends that the trial court abused its discretion by ordering Husband to pay said fees in monthly installments.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/14/2020