J-A14009-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| CHERI L. WISE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VERNON L. WISE, III | : | No. 1161 WDA 2020 |

Appeal from the Order Entered September 28, 2020
In the Court of Common Pleas of Butler County Civil Division at No(s):  F.C. No.
16-90190-D

| CHERI L. WISE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VERNON L. WISE, III | : | No. 1165 WDA 2020 |

Appeal from the Order Dated May 29, 2020
In the Court of Common Pleas of Butler County Domestic Relations
at No(s):  2016-90190

BEFORE:  MURRAY, J., KING, J., and MUSMANNO, J.

MEMORANDUM BY MURRAY, J.:                **FILED: JULY 9, 2021**

Cheri L. Wise (Wife) appeals from the trial court's determination that she breached a Marital Settlement Agreement (MSA) entered into with Vernon L. Wise (Husband), as well as the court's corresponding award to Husband of $65,577.36.  Upon review, we affirm.

We need not detail the factual and procedural background.  To summarize, this was the second marriage for both parties; they married on

January 24, 1999 and separated on March 24, 2016. Wife filed for divorce on November 13, 2017.

A Master's hearing was scheduled for August 21, 2019. On the day before the hearing, the parties entered into a comprehensive MSA. The next day, the parties appeared before the Master and verbally recited the terms of the MSA on the record. Of relevance to this appeal, the parties agreed to the following:

> So Plaintiff/Wife shall receive the following assets identified as marital by the parties in this case: First, she will receive [Husband's] entire 401k savings plan after the plan considers the loan currently secured by the 401k or loan against the 401k with the understanding that the net that will be rolled over to her by Qualified Domestic Relations Order will be about $201,000. . . .

> \* \* \*

> . . . [T]he parties agree that they will make arrangements through counsel to divide the marital artwork and furnishings with the intention of getting that accomplished on or before August 30th, at which time [W]ife is to have vacated [Husband's pre-marital] home on East Drive [(the Marital Residence)].

> . . . If the parties are unable to agree to a division of the marital artwork and marital household contents and furnishings, all such items will remain in the [M]arital [R]esidence, and a hearing date be sought by either party by request to the Master or directly to Judge Valasek, as the parties can agree at the time, with the understanding that's to be scheduled for a one-hour hearing.

> \* \* \*

> . . . Husband will receive the following items of marital property: To the extent that there is any increase in value in the [M]arital [R]esidence, he will retain the same free and clear of

any further claim of wife. The [M]arital [R]esidence that I'm referring to is the residence at East Drive that has been stipulated by prior Order of Court to be a premarital asset of [Husband], not subject to distribution in this case.

* * *

[Husband] will retain his marital jewelry and the following vehicles: The Porsche 911, the Acura NSX, the Mercedes Benz, the Subaru and his Dodge truck subject to the encumbrance for which he will be solely responsible and indemnify [Wife].

* * *

[Husband] will also receive sole and exclusive ownership of the silver saddle, which is a show saddle, which the parties estimate to have significant value. . . .

Finally, as to equitable distribution, [Husband] will pay an additional sum of $25,000 on top of the life insurance equity that [Wife] is to receive as soon as practical. Our understanding is that's going to happen this week so that [Wife] has an aggregate of $50,000 cash in her possession and available to her by the end of the week.

* * *

As to alimony and alimony pendente lite, the parties acknowledge that they have been subject to an order for alimony pendente lite in favor of [Wife], which was also scheduled to be heard by the Master today de novo currently in the aggregate amount of over $12,000 in cash per month, plus [Husband] maintaining the obligation secured by the home in which [Wife] has been residing for the last three and a half years.

That alimony pendente lite order would be considered the final Order of Court and continue in full force and effect until August 31, 2019, at which time alimony pendente lite will convert to alimony, will be modified such that [Husband] pays $7,500 per month beginning September 1, 2019, for a period of 36 months. Following 36 months, beginning September 1, 2022, [Husband] shall pay $6,500 per month alimony for an additional 36 months. The aggregate term of alimony or alimony pendente lite until it's

converted beginning September 1st is six years and the aggregate amount [is] $504,000 during that period of time.

N.T., 8/21/19, at 4-9.

Wife vacated the Marital Residence as provided in the MSA, and the parties signed waivers of notice of entry of a divorce decree and affidavits of consent. A divorce decree was entered on August 28, 2019. On September 4, 2019, the trial court adopted the parties' MSA as an order of court.

On September 6, 2019, Husband filed an Emergency Petition for Contempt after returning to the Marital Residence to find "all of the utilities had been turned off on August 29th, the water treatment system, the generator and the washer and dryer had been removed, and water damage was caused by the defrosting freezer." Emergency Petition for Contempt, 9/6/19, at ¶8. Husband also alleged that Wife had removed "numerous" items of marital property, but stated he was "still assessing what ha[d] been removed from the residence and the damage caused by Wife." *Id.* at ¶¶9-10. The trial court ordered Wife to return the removed property within five days of the order. Order, 9/6/19.

On September 26, 2019, Husband filed a second Petition for Contempt. He alleged Wife "failed or refused to return any of the property removed from the house"; he also averred that Wife had signed the title of the Porsche 911 he was to receive under the MSA to James Kemple, "a local private investigator in the employ of Wife for a period of many months." Petition for Contempt, 9/26/19, at ¶¶10, 16. Husband requested the court

find Wife in contempt, compel the return of the removed property, and award Husband reasonable attorney fees.

In response, the trial court scheduled contempt hearings for November 25, 2019 and March 4, 2020.[1] On May 29, 2020, the court found Wife in contempt for breaching the terms of the MSA. Order, 5/29/20. The trial court held hearings on August 18 and August 27, 2020 to assess damages as a result of Wife's contempt. On September 28, 2020, the trial court issued an order awarding Husband $65,577.36.

Wife filed this timely appeal. Both Wife and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925. Wife presents seven issues:

1. Whether the court erred in finding Wife in contempt when neither Husband's Petition nor the court's opinion and order specifically identify the marital property allegedly transferred by Wife and Wife was not on notice of the specific allegations against her.

2. Whether the court erred in finding Wife in contempt for removing "original artworks and pieces of furniture" when there was no order or agreement that awarded that property to Husband.

3. Whether the court erred in finding Wife in contempt for removing items of marital property from Husband's residence, even though there was no order requiring those items to remain in Husband's residence and even though those items

---

[1] Wife's counsel filed a motion to continue the March 4, 2020 hearing because Wife was sick, but the court denied the motion. *See* Order, 3/4/20. Wife did not attend the March 4th hearing.

were still subject to distribution under the terms of the marriage settlement agreement.

4. Whether the court erred in calculating the value of items and alleged damages due to Husband.

5. Whether the court erred in entering a judgment for repair costs to the marital residence when that issue was never raised by Husband and the trial court specifically excluded it from consideration at the hearing on the issue of damages.

6. Whether the court erred in calculating a judgment against Wife in the absence of any finding that she specifically transferred, encumbered, sold or disposed of any specific marital asset.

7. Whether the court erred in failing to consider Wife's ability to pay the judgment entered against her as an appropriate sanction for contempt.

Wife's Brief at 6-7.

Preliminarily, we recognize that "[w]hen interpreting a marital settlement agreement, the trial court is the sole determiner of facts and absent an abuse of discretion, we will not usurp the trial court's fact-finding function." *Stamerro v. Stamerro*, 889 A.2d 1251, 1257 (Pa. Super. 2005) (quotation marks and citation omitted). We are thus bound by the court's credibility determinations. *Id.* at 1257-58. Marital settlement agreements are subject to contract principles, and to the extent the issues present questions of law, our standard of review is *de novo*, and our scope of review is plenary. *Id.* at 1257; *see also Kraisinger v. Kraisinger*, 928 A.2d 333, 339 (Pa. Super. 2007).

When reviewing a contempt finding, our scope of review is very narrow, and we place great reliance on the court's discretion. *Thomas v.*

*Thomas*, 194 A.3d 220, 225 (Pa. Super. 2018) (citing *Garr v. Peters*, 773 A.2d 183, 189 (Pa. Super. 2001)). "The court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason." *Harcar v. Harcar*, 982 A.2d 1230, 1234 (Pa. Super. 2009). "Each court is the exclusive judge of contempts against its process. The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from failing into disrepute." *Habjan v. Habjan*, 73 A.3d 630, 637 (Pa. Super. 2013). We are also mindful that this Court defers to the credibility determinations of the trial court with regard to the witnesses who appeared before it, as that court has had the opportunity to observe their demeanor. *Garr*, 773 A.2d at 189 (citations omitted). Absent an error of law or an abuse of discretion, we will not disrupt a finding of civil contempt if the record supports the court's findings. *Thomas*, 194 A.3d at 225.

"In proceedings for civil contempt of court, the general rule is that the burden of proof rests with the complaining party to demonstrate that the [contemnor] is in noncompliance with a court order." *MacDougall v. MacDougall*, 49 A.3d 890, 892 (Pa. Super. 2012). "To sustain a finding of civil contempt, the complainant must prove, by a preponderance of the evidence, that: (1) the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) the act constituting the contemnor's violation was volitional; and (3) the contemnor acted with wrongful intent." *Id.* Nevertheless, "a mere showing of noncompliance with

a court order, or even misconduct, is never sufficient alone to prove civil contempt." **Habjan**, 73 A.3d at 637. "If the alleged contemnor is unable to perform and has, in good faith, attempted to comply with the court order, then contempt is not proven." **Cunningham v. Cunningham**, 182 A.3d 464, 471 (Pa. Super. 2018). "The contemnor has the burden to prove the affirmative defense that he lacks the ability to comply." **Id.** A marital settlement agreement is enforceable through contempt. **See** 23 Pa.C.S.A. § 3105(a); 23 Pa.C.S.A. § 3502(e)(9).

Finally, it is well-settled that "counsel fees can serve as a sanction upon a finding of civil contempt." **Sutch v. Roxborough Memorial Hospital**, 142 A.3d 38, 69; **Rhoades v. Pryce**, 874 A.2d 148, 152 (Pa. Super. 2005). The purpose of awarding counsel fees is "to reimburse an innocent litigant for the expenses the conduct of an opponent makes necessary, such as the cost of the contempt hearing, so it can be coercive and compensatory but it cannot be punitive." **Sutch, supra** at 69. We review an award of contempt sanctions in the form of counsel fees for an abuse of discretion. **Mrozek v. James**, 780 A.2d 670, 674 (Pa. Super. 2001).

Wife first argues Husband failed to provide her with adequate notice of items she removed from the marital residence in violation of the MSA. Wife states, "Beyond identifying a few specific items (water treatment system, generator, and washer and dryer), Husband said that he would need to further investigate what other items were taken." Wife's Brief at 18. Wife

asserts Husband supplemented the list of items removed at the hearings "without ever providing advanced notice to Wife and without citing any order that identified any such property as marital or as having been in the residence in the first place." *Id.* at 19. Wife claims Husband's actions forced her to defend "without advanced notice, against ever-expanding allegations of contempt," and "was a denial of Wife's due process right to notice of the allegations against her." *Id.*

This issue is waived. In her brief, Wife fails to reference where or when she preserved this issue with the trial court, in circumvention of Pennsylvania Rules of Appellate Procedure 2117(c)[2] and Rule 2119(e).[3]

_____

[2] Rule 2117 provides:

> (c) Statement of place of raising or preservation of issues. Where under the applicable law an issue is not reviewable on appeal unless raised or preserved below, the statement of the case shall also specify:
>
> (1) The state of the proceedings in the court of first instance, and in any appellate court below, at which, and the manner in which, the questions sought to be reviewed were raised.
>
> (2) The method of raising them (e.g. by a pleading, by a request to charge and exceptions, etc.).
>
> (3) The way in which they were passed upon by the court.
>
> (4) Such pertinent quotations of specific portions of the record, or summary thereof, with specific reference to the places in the record where the matter appears (e.g. ruling or exception thereto, etc.) as will show that the question

*(Footnote Continued Next Page)*

Indeed, our review of the record reveals Wife made no objections, evidentiary or procedural, during the contempt proceedings, and did not file an answer either denying Husband's averments or challenging lack of notice. Accordingly, Wife's first issue is waived. *See* Pa.R.A.P. 2117(c), 2119(e).

Wife addresses her second and third issues together. Her entire argument reads:

> In both his September 5, 2020 Emergency Petition for Contempt/Special Relief and his September 23, 2020 Petition for Contempt/Special Relief, Husband alleged that Wife's actions in allegedly removing items of property from the marital residence on August 30, 2019 constitute contempt. However, the Order Wife is alleged to have violated - the order that adopted the parties' MSA as an Order of Court, was not entered until September 4, 2019. The most basic premise of a finding of contempt is that a party violated an Order of Court of which she had notice. *In re Cullen*, 849 A.2d 1210-11 (Pa. Super. 2004). Wife could not have had notice of an order that did not yet exist. Therefore, the finding of contempt against Wife was improper.

Wife's Brief at 21-22.

Given the brevity of Wife's argument, we note that when appellants fail to properly raise or develop their issues on appeal, or when their

*(Footnote Continued)* ―――――――――

> was timely and properly raised below so as to preserve the question on appeal.

Pa.R.A.P. 2117(c).

[3] "Where under the applicable law an issue is not reviewable on appeal unless raised or preserved below, the argument must set forth, in immediate connection therewith or in a footnote thereto, either a specific cross-reference to the page or pages of the statement of the case which set forth the information relating thereto . . . ." Pa.R.A.P. 2119(e).

argument is inadequate, this Court will not consider the merits of the claims. *See, e.g., Karn v. Quick & Reilly Inc.*, 912 A.2d 329, 337 (Pa. Super. 2006) (appeal dismissed for substantial briefing defects that hampered this Court's meaningful review); *Lackner v. Glosser*, 892 A.2d 21, 29 (Pa. Super. 2006) (appellate arguments which are not appropriately developed or fail to adhere to the Rules of Appellate Procedure are waived).

Nonetheless, we find Wife's substantive argument that she had lack of notice to be disingenuous. The parties placed the terms of the MSA on the record when they appeared before the Master on August 21, 2019. The record indicates the parties agreed upon the terms of the MSA and intended those terms to be binding. Wife does not assert that the MSA adopted by the court in its September 4, 2019 order was different from the MSA agreed upon and read into the record on August 21, 2019. As reflected by the title and body of his "Emergency Petition," Husband was concerned about the exigency and practical effect of Wife's alleged actions on August 30th, approximately a week after the parties executed the MSA and presented it to the Master; however, Husband did not file for contempt until after the court adopted the MSA in its September 4, 2019 order. The record does not support a finding of impropriety on the part of Husband or the trial court. Wife's second and third issues lack merit.

Wife's fourth, fifth and sixth issues relate to the trial court's award to Husband of $65,577.36, which the court ordered after finding Wife in contempt and conducting hearings "to determine [the] appropriate remedy

- 11 -

or remedies." Order, 9/28/20. The court explained the $65,577.36 was comprised of the following:

1. $1,800 represents one-half of the fair market value of all items of personal property removed from the marital home contrary to the terms of the [MSA], excluding the artwork;

2. $40,000 represents fair market value of the 1987 Porsche 911, possession of which was never delivered to [Husband] by [Wife];

3. $12,525.00 represents the total cost of repairing the marital home, the repairs being necessary because of [Wife's] removal of fixtures;

4. $11,252.36 represents the amount of counsel fees and related costs that [Husband] has incurred as a result of [Wife's] violations of the [MSA];

5. The silver saddle is available to [Husband] currently.

*Id.*

In challenging the award, Wife argues: 1) the trial court "makes no finding as to what items were included in its calculations" when awarding $1,800 to Husband for half of the fair market value of personal items removed from the residence; 2) the award of $12,525 for home repairs "bore no relation to the alleged contempt" because "[t]he only fixtures the court found that Wife removed from the residence were the water filtration system and a generator"; and 3) the award of attorney's fees was grossly unreasonable. Wife's Brief at 23-24.

The Divorce Code authorizes a trial court to order remedies or sanctions when a party fails to comply with terms of equitable distribution. Specifically, Section 3105 states:

**§ 3105 Effect of agreement between parties**

**(a) Enforcement.**—A party to an agreement regarding matters within the jurisdiction of the court under [the Divorce Code], whether or not the agreement has been merged or incorporated into the decree, may utilize a remedy or sanction set forth in [the Divorce Code] to enforce the agreement to the same extent as though the agreement had been an order of the court except as provided to the contrary in the agreement.

23 Pa.C.S.A. § 3105(a).

In addition, Section 3502 delineates the court's powers when a party fails to comply with the terms of equitable distribution:

**(e) Powers of the court.**—If, at any time, a party has failed to comply with an order of equitable distribution, as provided for in this chapter or with the terms of an agreement as entered into between the parties, after hearing, the court may, in addition to any other remedy available under this part, in order to effect compliance with its order:

(1) enter judgment;

(2) authorize the taking and seizure of the goods and chattels and collection of the rents and profits of the real and personal, tangible and intangible property of the party;

(3) award interest on unpaid installments;

(4) order and direct the transfer or sale of any property required in order to comply with the court's order;

(5) require security to insure future payments in compliance with the court's order;

(6) issue attachment proceedings, directed to the sheriff or other proper officer of the county, directing that the person named as having failed to comply with the court order be brought before the court, at such time as the court may direct. . . .;

(7) award counsel fees and costs;

(8) attach wages; or

(9) find the party in contempt.

23 Pa.C.S.A. § 3502.

Wife's first claim regarding the court's $1,800 calculation for Husband's one-half share of the items Wife removed from the residence is meritless. The record is replete with Husband's testimony describing the items and their worth. *See generally*, N.T., 8/18/20, at 10-57. In fact, our review indicates the trial court's award of $1,800 was conservative, and possibly undervalued Husband's share of the items taken by Wife.

Wife's second claim – that the award of $12,525 for home repairs bears no relation to the contempt – is similarly lacking. The trial court specified that the amount awarded to "repair the marital home" was necessary "because of [Wife's] removal of fixtures." Order, 9/28/20, at ¶3. The award was not, as Wife suggests, for routine repairs.[4] Husband described numerous fixtures Wife removed from the residence, including a

---

[4] For example, the trial court stated that Husband's testimony about the furnace not being maintained in four-and-a-half years was "beyond the pale of this [proceeding]"). N.T., 8/18/20, at 37.

whole-house generator, water filtration system, heated towel rack, invisible fencing, radon pump and built-ins from the kitchen pantry; repairs associated with the removal of fixtures exceeded $15,000. N.T., 8/18/20, at 37-39, 44, 47-48, 50-52. Thus, the court did not err in awarding $12,525 for costs and repairs incurred as a result of Wife's removal of fixtures.

Wife's third claim, in which she asserts that Husband's attorney's fees were unreasonable, is also belied by the record. We first recognize:

> We have a limited power of review of court awarded fees. As the Supreme Court has so frequently stated, the responsibility for setting such fees lies primarily with the trial court and we have the power to reverse its exercise of discretion only where there is plain error. Plain error is found where the award is based either on factual findings for which there is no evidentiary support or on legal factors other than those that are relevant to such an award. The rationale behind this limited scope of review is sound. It is the trial court that has the best opportunity to judge the attorney's skills, the effort that was required and actually put forth in the matter at hand, and the value of that effort at the time and place involved.

> \* \* \*

> [Our] Supreme Court has enumerated the factors to be considered in determining if a request for attorney's fees is reasonable. [The Court identified the following considerations:]

> . . . the amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; whether the fund involved was "created" by the attorney; the professional skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and, very importantly, the amount of money or the value of the property in question [sic].

- 15 -

***Gilmore by Gilmore v. Dondero***, 582 A.2d 1106, 1109 (Pa. Super. 1990) (citations omitted).

The trial court did not err in ordering Wife to pay Husband $11,252.36 for attorney's fees. Husband's counsel testified about his legal services and fees associated with the contempt action, and submitted two detailed invoices. N.T., 3/4/20, at 63 Ex. K; N.T., 8/27/20, at 37-38, 42 Ex. K-2 (describing phone calls, drafting, research and court appearances totaling $11,252.36). As the record supports the award, we discern no abuse discretion.

We also find no merit to Wife's claim that the trial court failed to consider her "ability to comply with the MSA or to pay such a judgment." Wife's Brief at 25. Wife states she suffers from Addison's, which "interferes with her physical and mental faculties." ***Id.*** She contends her only income is "alimony that is to be paid by Husband," but also states "Husband has never made reliable and regular alimony payments." ***Id.***

Wife does not cite authority requiring a trial court to consider ability to pay when making an award following a finding of civil contempt. ***See, generally,*** Wife's Brief at 24-25. When an appellant cites no authority to support an argument, "this Court is inclined to believe there is none." ***Commonwealth v. Reyes-Rodriguez***, 111 A.3d 775, 781 (Pa. Super. 2015) (citing Pa.R.A.P. 2119(a) and (b)) (requiring appellant to discuss and cite pertinent authorities); ***see also*** 23 Pa.C.S.A. § 3102.

However, to the extent Wife asserts she lacks the ability to pay, the record reflects otherwise. Wife testified that she recently purchased a home for $484,481 and received a $200,000 distribution from Husband's 401(k). N.T., 11/25/19, at 40; N.T., 3/4/20, at 81. In addition, Wife received $12,000 per month in alimony *pendente lite*, is receiving $7,500 per month in alimony for three years following the parties' divorce, and will receive $6,500 per month in alimony for three years thereafter. **See** N.T., 8/21/19, at 8-9. Although Wife states that Husband "has never made reliable and regular alimony payments," Wife's Brief at 25, the record indicates Husband has never missed an alimony payment. N.T., 8/27/20, at 33-36.[5]

For the above reasons, we find no trial court error, and affirm the finding of contempt and award of $65,577.36.

Order affirmed.

---

[5] Wife's complaint is that Husband does not pay his alimony on the same day each month, not that he fails to pay it at all. N.T., 8/27/20, at 35 (Wife stating the "problem is [] that it's not coming in a standard amount on a regular schedule.").

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  7/9/2021